# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**GAIL L. ANTLE,**

    **Plaintiff,**

-vs-             **Case No. 6:10-cv-1642-Orl-28KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

_____

# REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

  This cause came on for consideration without oral argument on the Complaint filed by Gail L. Antle, seeking review of the final decision of the Commissioner of Social Security denying her claim for social security benefits. Doc. No. 1. The Commissioner answered the Complaint and filed a certified copy of the record before the Social Security Administration (SSA). Doc. Nos. 10, 11. This case was referred to me for issuance of a Report and Recommendation.

## I. PROCEDURAL HISTORY.

  In March of 2007, Antle applied for disability benefits under the Federal Old Age, Survivors and Disability Insurance Programs (OASDI), 42 U.S.C. § 401 *et seq.* (sometimes referred to herein as the Act). R. 103-05. She alleged that she became disabled on August 12, 2005. R. 103. Antle's application was denied initially and on reconsideration. R. 70-73, 79-80, 84-85.

Antle requested a hearing before an administrative law judge (ALJ). R. 87. An ALJ held a hearing on May 19, 2009. Antle, represented by an attorney, testified at the hearing. Robert Bradley, a vocational expert (VE), also testified. R. 43-45.

After considering the testimony and the medical evidence presented, the ALJ determined that Antle was insured under OASDI through December 31, 2010. R. 19, 21. The ALJ found that Antle had not engaged in substantial gainful activity since the alleged onset date of her disability. R. 21.

The ALJ concluded that the medical evidence showed that Antle had rheumatoid arthritis and carpal tunnel syndrome. R. 21. These impairments did not meet or equal any of the impairments listed in the applicable social security regulations (the Listings). R. 24.

The ALJ found that Antle had the residual functional capacity (RFC) to perform light work,[1] specifically as follows: she could lift/carry 20 pounds occasionally and 10 pounds or less frequently; sit for 6 hours and stand/walk for 6 hours in an 8-hour workday; climb stairs and ramps, but not ropes, ladders or scaffolds; balance, stoop, kneel, crouch and crawl. The ALJ concluded that Antle would be limited to occasional use of her hands, fingering and manual dexterity due to carpal tunnel syndrome. R. 24.

---

[1] Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567.

In reaching this conclusion, the ALJ did not credit the opinion of Dr. Kohen that Antle could only perform less than sedentary work.  R. 23, 26.  The ALJ gave greater weight to the opinions of Drs. O'Donnell, Clancy, Abril, Shoemaker and Turetsky.  R. 25.

The ALJ concluded that Antle could not return to any of her past relevant work.  Relying on the testimony of the VE and other evidence in the record, the ALJ concluded that Antle could perform other jobs which existed in the economy, including the light duty and semi-skilled positions of hotel clerk and gate guard.  R. 27.  Therefore, the ALJ concluded that Antle was not disabled.  *Id*.

Antle requested review of the ALJ's decision.  R. 5, 7-12.  She submitted additional records for review by the Appeals Council, including an additional record from Dr. Kohen, a list of Dr. Kohen's qualifications, and information regarding her medications.  *See* R. 350-73.  On September 15, 2010, the Appeals Council indicated that it had reviewed the new evidence and that it found no basis to review the ALJ's decision.  R. 1-4.  Antle timely sought review of this decision by this Court.  Doc. No. 1.

## II.    JURISDICTION.

Plaintiff having exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

## III.    STANDARD OF REVIEW.

To be entitled to disability benefits under OASDI, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than

twelve months.  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" under the terms of

the Act is one "that results from anatomical, physiological, or psychological abnormalities which

are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42

U.S.C. § 423(d)(3).  In a case seeking disability benefits under OASDI, the claimant also must

show that he or she became disabled before his or her insured status expired in order to be entitled

to disability benefits.  42 U.S.C. § 423(c)(1); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir.

1979) (per curiam).

Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry that must be

followed in determining whether a claimant is entitled to benefits.  In sum, an ALJ must apply the

following criteria, in sequence:

> (1)    Is the claimant presently unemployed?
>
> (2)    Is the claimant's impairment severe?
>
> (3)    Does the claimant's impairment meet or equal one of the specific
>        impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
>
> (4)    Is the claimant unable to perform his or her former occupation?
>
> (5)    Is the claimant unable to perform any other work within the
>        economy?

20 C.F.R. § 404.1520(a)(4).  An affirmative answer to any of the above questions leads to either

the next question, or, on steps three and five, to a finding of disability.  A negative answer leads to

a finding of "not disabled."  *See, e.g.*, *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled

to receive Social Security disability benefits."  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir.

2001) (citing 20 C.F.R. § 404.1512(a)). However, "the burden temporarily shifts at step five to the Commissioner[,] . . . [who] must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform." *Id*. at 1278 n.2 (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

The SSA's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); *Dyer*, 395 F.3d at 1210. "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982) (internal quotations omitted).

The court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983)). Where the SSA's decision is supported by substantial evidence, the court will affirm, even if the court finds that the proof preponderates against the decision. *Dyer*, 395 F.3d at 1210. The court may not reweigh the evidence or substitute its own judgment. *Id*.

While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating

claims. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988) (per curiam). Therefore, the court

will reverse if the SSA incorrectly applied the law, or if the decision fails to provide the court with

sufficient reasoning to determine that the SSA properly applied the law. *Keeton v. Dep't of Health

& Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d

1143, 1145 (11th Cir. 1991)).

When reviewing a final decision issued by the SSA, the court is authorized to "enter . . . a

judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause

for a rehearing." 42 U.S.C. § 405(g).

## IV.    STATEMENT OF FACTS.

After a thorough review of the record, I find that the pertinent facts are adequately set forth

in the ALJ's decision and the parties' memoranda. Therefore, I will only summarize the relevant

facts to protect Antle's privacy to the extent possible.

### A.    *Personal Information and Work History.*

Antle was born in 1959. R. 103. She graduated from high school. R. 32-33.

At her last job, Antle worked on the phone and computer. R. 35. The VE testified that

Antle's prior jobs would be classified under the *Dictionary of Occupational Titles* (DOT) as

telemarketer sales manager, a sedentary, skilled position, and telephone customer service

representative, a sedentary, skilled position. R. 32.

### B.    *Medical Records.*

Erica L. O'Donnell, D.O., treated Antle on January 13, 2005. Antle complained of pain in

her knees, hands and shoulders. She had positive Phalen's and Tinel's signs. Dr. O'Donnell

-6-

diagnosed possible bilateral carpal tunnel syndrome, rheumatoid arthritis, and cervical strain. She prescribed medications and wrist splints. R. 239.

Timothy J. Wierzbicke, M.D., a neurologist, treated Antle on May 2, 2005 for hand weakness and numbness. Antle described pain and dysesthesia (abnormal sense of touch) in her fingers and wrist, which problems were aggravated by typing nine hours per day. She also described shoulder and knee pain. R. 191, 249. Upon examination, Dr. Wierzbicke observed that Antle did not have weakness but that the pain in her hands limited her to short burst strength testing as to certain joints in her hands. Her strength testing was 5/5, and Phalen's and Tinel's tests were negative. R. 192, 250. Dr. Wierzbicke's impression was arthralgias (joint pain) with neurologic features including tingling dysesthesias of the finger tips which were likely secondary effects of carpal tunnel syndrome. He recommended EMG testing as well as use of carpal tunnel splints and prescribed Mobic. R. 193, 251. An EMG on May 11, 2005 revealed carpal tunnel syndrome on the right and likely developing on the left as well. R. 190, 247, 253.

On July 18, 2005, Antle reported that her symptoms were more intense despite medication and splints. Dr. Wierzbicke referred her to a hand surgeon. R. 188, 248.

On August 25, 2005, Antle treated with Tamara Ray Clancy, M.D., a hand surgeon, for her carpal tunnel syndrome. R. 200. Dr. Clancy believed Antle had bilateral carpal tunnel syndrome and injected both hands. R. 199-200.

Andy Abril, M.D., first treated Antle on October 18, 2005. Antle reported having joint pain in her hands, right knee, left foot and shoulders for one to two years. The pain in her hands was worse in the morning and she had some swelling. She had generalized joint stiffness in the

morning for one to one and a half hours.  She had constant problems with her knee, which had

been somewhat relieved by drainage and steroid injections.  R. 219, 347.  Physical examination

revealed synovitis (inflammation of joint lining) and tenderness in her right wrist, pain and

swelling of her right knee, and a large nodule on her foot.  Dr. Abril's impression was rheumatoid

arthritis.  R. 220, 348.  He prescribed Prednisone and Methotrexate.  R. 221, 349.

Dr. Abril noted Antle was doing really well on December 7, 2005.  She reported joint

stiffness for less than an hour and stated that she was able to function well.  Her joint symptoms

were significantly better.  She had more pain in her right wrist but her other joints were fine.  R.

217, 343.

In March of 2006, Antle reported doing well and denied any significant pain, swelling or

discomfort.  She was stiff for only thirty minutes in the morning.  Dr. Abril decreased her levels of

Prednisone and Methotrexate.  R. 182, 215, 234, 341.

In June of 2006, Antle continued to deny significant stiffness or pain and reported that she

was stiff for less than thirty minutes in the morning.  She had recently fallen and fractured her

wrist.  R.180, 213, 232, 244, 339.

On September 27, 2006, Dr. Abril increased Antle's medications to relieve aching and

stiffness.  Antle reported that she was doing well, and she did not complain of any pain or

swelling.  Antle still had slight inflammation in her right wrist and left.  R. 178, 211, 230, 337.

Antle reported an episode of chest discomfort, dizziness, chills and vomiting on the

morning of December 6, 2006.  She also had sweating and finger numbness that has subsided by

the time she saw Dr. Abril.  She occasionally took Aleve for her knee pain, which provided

marginal improvement. R. 175, 208, 227, 334. Dr. Abril noted her rheumatoid arthritis was well-controlled. He prescribed Relafen for her knee pain. R. 176, 209, 228, 335.

On January 31, 2007, Antle reported more right hand and right knee discomfort since she stopped taking Prednisone three months earlier. Relafen did not help her knee pain much. Blood work showed elevated liver function tests. Dr. Abril injected her knee with corticosteroids. R. 173, 206, 225, 332. He also prescribed Prednisone again. R. 174, 207, 226, 334.

James R. Shoemaker, D.O., examined Antle on May 7, 2007 at the request of the SSA. She complained of pain in her hands, knees and back and weakness in her hands. She stated that she dropped things and had difficulty writing. R. 260. Dr. Shoemaker observed on examination that Antle had full range of motion in her wrists, elbows and shoulders. She had 4/5 grip strength in her right hand and 4+/5 in her left hand. She had mild loss of dexterity with her fingers and manipulation. R. 261. She had a normal gait but had crepitus (cracking) in her knees with flexion and extension. Dr. Shoemaker's impression was rheumatoid arthritis and bilateral carpal tunnel syndrome. R. 262.

In May 2007, Antle complained of weakness and aching in her hands and that she had been dropping things. An injection helped her knee for some time but the pain returned. Prednisone helped her pain significantly. She was not sleeping well due to pain. R. 185, 330. Upon examination, Dr. Abril noted that range of motion in her knee had improved significantly. R. 185-86, 330-31. There was no synovitis in her hands. Dr. Abril opined that Antle's rheumatoid arthritis was well controlled and there was no active disease. He could not explain her symptoms based on her rheumatoid arthritis. He gave her a prescription to help her sleep. R. 186,

331. Antle apparently gave Dr. Abril forms to complete for her social security claim, but Dr. Abril indicated he "could not support disability based on active disease." R. 186, 223-24.

On August 14, 2007, Janet Attlesey, M.D., completed a Physical Residual Functional Capacity Assessment. R. 275-82. Dr. Attlesey opined that Antle could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, sit, stand and/or walk about 6 hours in an 8-hour workday, and perform limited pushing and pulling with her upper extremities. R. 276. She could occasionally climb ramps or stairs and should never climb ladders, ropes or scaffolds. She could occasionally balance, kneel, crouch and crawl and could frequently stoop. R. 277. She was limited in handling (gross manipulation) and fingering (fine manipulation) and could not perform constant handling or fingering bilaterally. R. 278. She should avoid concentrated exposure to vibration and hazards such as machinery or heights. R. 279.[2]

On September 10, 2007, Antle complained of weakness in her hands and lower legs. She had occasional numbness and tingling in her arms and legs. She was somewhat stiff in the mornings and had some aches and pains in her knees when she stood or walked. Examination showed some mild generalized weakness. R. 291, 328. Dr. Abril began tapering down her steroid medication as that could cause weakness. R. 292, 329. Dr. Abril found that there was still no active disease and no evidence of synovitis. R. 291, 328.

On February 11, 2008, Antle complained of some aches and pains in her hands, knees and feet which lasted an hour and were worse with standing or walking. She had not noticed much

---

[2] An individual who appears to be a single decisionmaker prepared an RFC assessment in May 11, 2007 that was substantially the same as Dr. Attlesey's assessment. R. 267-74.

swelling and just stopped taking Prednisone. Dr. Abril noted that Antle might have slight synovitis in her hand and feet joints. Her liver function tests were slightly elevated. Dr. Abril instructed her to lessen her Prednisone dosage and, ultimately, to stop taking the medication. R. 287, 326. He noted that degenerative arthritis might be causing some of her symptoms. R. 287-88, 326-27.

In June of 2008, Antle reported tiredness, achiness and stiffness for about an hour after she stopped taking Prednisone. She had discomfort in her right knee in the morning and if she had been on her feet during the day. She had increased stiffness in her feet and synovitis in joints of both feet. Her liver function tests had worsened. R. 284, 324. Dr. Abril changed her medications. R. 285, 325.

On July 2, 2008, Antle reported anxiety and insomnia. Dr. O'Donnell prescribed Ambien for sleep. R. 304. On July 14, 2008, a bone study revealed osteopenia of the femoral necks and hips bilaterally. R. 301.

Michael D. Kohen, M.D., Fellow of the American College of Rheumatology, first treated Antle on November 7, 2008. R. 308-09, 353. Antle complained of pain in her knees, hands, feet, toes, left hip, neck, low back and wrists. She reported falling a lot due to weakness and a balance problem. Upon examination, Dr. Kohen observed that Antle's spine, joints and muscles were diffusely tender with many tender points. She had decreased range of motion in her right and left wrist and a mild decrease of motion in her shoulder. She had diminished strength. R. 308. Dr. Kohen diagnosed rheumatoid arthritis with possible related fibromyalgia syndrome and carpal

tunnel syndrome. He recommended use of a cane so she would not fall and prescribed Arava. R. 309.

Dr. Kohen saw Antle again on December 12, 2008. She reported stiffness that could last from one hour to many hours. She could walk fifteen minutes. She was not taking Arava. Upon examination, Dr. Kohen observed "many tender points," decreased motion in Antle's wrist and shoulders and decreased strength. He diagnosed rheumatoid arthritis, fibromyalgia syndrome and carpal tunnel syndrome. She was instructed to take her medication. R. 322. As of March 20, 2009, Antle had a little less pain while taking her medication and did not have much morning stiffness. She still had pain and swelling in her fingers, knees and ankles. She had hypertension and mild nausea and poor motion in her shoulders. Dr. Kohen's diagnoses remained the same. R. 314.

Dr. Kohen completed an arthritis residual functional capacity questionnaire on March 30, 2009, in which he stated that Antle had constant and severe pain all over. He opined that Antle had rheumatoid arthritis, fibromyalgia syndrome and carpal tunnel syndrome. R. 315. He also noted that Antle had depression and anxiety. R. 315-16. Dr. Kohen wrote that Antle's symptoms would constantly interfere with her ability to concentrate, even on simple work tasks. He believed that Antle was incapable of working at a low stress job. He noted side effects of her medications including dizziness, nervousness, stomach upset and fatigue. He indicated she could not walk any blocks without rest or severe pain. *Id.*

Dr. Kohen further opined that Antle could sit or stand 30 minutes at a time. R. 316. In an 8-hour workday, she could sit and stand/walk less than 2 hours. However, every 30 minutes, she

needed to walk for 15 minutes. She needed to be able to shift positions and to take a 30 minute break to sit quietly every 30 minutes. If her knee was swollen, she would need to elevate her knee during 40% of the day. She needed to use a cane. She could rarely lift 10 pounds and never lift heavier weights. R. 317. She could never climb ladders or stairs, could rarely twist, and could only occasionally stoop or crouch/squat. During an 8-hour day, she could only spend 10% of the day using her hands and arms, and 5% of the day using her fingers. Dr. Kohen estimated Antle was likely to miss more than four days of work per month due to her condition. R. 318.

Dr. Kohen saw Antle again on July 27, 2009. At that time, Antle reported daily pain in her wrists, knees, hands and feet. She had stiffness for thirty minutes in the morning. She had fatigue and became tired after walking twenty minutes. Upon examination, Dr. Kohen observed that Antle had poor motion in her right wrist and that her grip strength was diminished. Dr. Kohen noted as to fibromyalgia that Antle had all eighteen tender points in the areas of the neck, upper chest, forearms, buttocks, knees and gluteal area. R. 350.

C.    *Claimant's Hearing Testimony and Written Statements.*

At the ALJ's hearing, Antle stated she stopped working at her last job because she could not type anymore. Her fingers went numb immediately when she began typing. R. 34-35. Carpal tunnel syndrome affected both hands. She could open a door with both hands but it took her some time. R. 36. She felt she could perform a job if it did not deal with her hands. R. 37. Taking care of her personal hygiene and performing household chores were difficult and painful. R. 127.

-13-

Antle testified that her worst pain was in her legs and hands. R. 37. She had pulsating pain at a level of 8 on a 10-point scale. R. 38. Her knees and wrists swelled and were worse depending on the weather. R. 39-40. She used a cane so she would not fall. R. 37.

Antle indicated that she had been on medications for depression and anxiety for six months. R. 38. She had panic attacks occasionally. R. 40-41. Those medications made her dizzy and interfered with her ability to concentrate. R. 38. Other medication caused bruising and shaking. R. 40, 126.

D.     *Vocational Expert Testimony.*

The VE testified that Antle's prior jobs required occasional fingering and frequent manual dexterity. The ALJ did not pose a hypothetical question to the VE. Rather, he asked the VE for examples of light work that "would not require anymore [than] occasional use of the hands." The VE responded that such jobs included motel clerk and gate guard, both of which were semi-skilled, light duty positions. R. 42. The VE testified that the motel clerk position would require occasional use of a computer. R. 43. He indicated that the gate guard position would require occasional manual dexterity including writing. R. 43-44.

## V.     ANALYSIS.

Antle asserts four grounds supporting reversal. First, she argues that the ALJ failed to consider the side effects of her medications. Second, she asserts that the ALJ failed to include all of her impairments in his RFC and in his hypothetical to the VE. Third, she contends that the Appeals Council failed to consider new evidence she submitted. Fourth, she complains that the ALJ failed to investigate and develop arguments regarding her medications, Dr. Kohen's

treatment, and Antle's manual dexterity. These are the only issues I will address.[3] I begin with

discussion of the third issue, because it appears to be dispositive.

     A.    *New Evidence to the Appeals Council.*

     Antle contends that the Appeals Council failed properly to consider additional evidence

she submitted, including an additional record from Dr. Kohen, Dr. Kohen's qualifications, and

information regarding her prescriptions. The additional record from Dr. Kohen indicated that

Antle had all eighteen fibromyalgia tender points in the neck, upper chest, forearms, buttocks,

knees and gluteal area. R. 350. Antle argues that Dr. Kohen's qualifications show he is an expert

in arthritic and rheumatological diseases.

     The Appeals Council is required to consider new, material, and chronologically relevant

evidence and must review the case if the ALJ's decision is contrary to the weight of the record

evidence. 20 C.F.R. § 404.970(b); *Ingram v. Comm'r*, 496 F.3d 1253, 1261 (11th Cir. 2007).

"[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court

must consider whether that new evidence renders the denial of benefits erroneous." *Id.* at 1262.

     In the present case, the new evidence submitted to the Appeals Council undermined the

bases for the ALJ's decision to reject the opinions of Dr. Kohen, one of Antle's treating

physicians. The ALJ rejected Dr. Kohen's opinions regarding Antle's functional capacity for the

following reasons:

> With regard to Dr. Kohen's diagnosis of fibromyalgia, [in] each of
> his exam reports he stated that there were many tender points, but he

---

[3] The parties were advised that issues not specifically raised would be waived. Doc. No. 12.

> did not identify each by specific location. The record does not
> reflect that Dr. Kohen is a neurologist or that he referred the
> claimant for evaluation by an expert. Thus, it appears that the
> diagnosis was casually made and is hereby rejected. . . .

R. 23. In the evidence presented to the Appeals Council, Antle presented Dr. Kohen's CV, which

establishes that he is a Fellow of the American College of Rheumatology. Therefore, contrary to

the ALJ's conclusion, Dr. Kohen is an expert in rheumatology, which is a specialty that includes

the diagnosis and treatment of fibromyalgia. "The American College of Rheumatology has

developed diagnostic criteria by which a person can be affirmatively diagnosed with fibromyalgia

if he or she has widespread pain in combination with tenderness in at least eleven of eighteen

specific tender point sites. *See* National Institute of Arthritis and Musculoskeletal and Skin

Diseases, Questions and Answers About Fibromyalgia (1999), available at

http://www.niams.nih.gov/Health_ Info/Fibromyalgia/default.asp (last visited January 7, 2008)."

*Harris v. Astrue*, 546 F. Supp. 2d 1267, 1282 (N.D. Fla. 2008). The new evidence also shows that

Dr. Kohen found all eighteen tender points in the areas of the neck, upper chest, forearms,

buttocks, knees and gluteal area. This evidence refutes the ALJ's finding that Dr. Kohen did not

identify each tender point by specific location.

Because Dr. Kohen was one of Antle's physicians who treated her during the insured

period, his opinion was entitled to significant weight unless good cause is shown to the contrary.

*See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 404.1527(d)(2). The

ALJ's stated reasons for rejecting Dr. Kohen's opinion are not supported by substantial evidence

considering the record as a whole. The Appeals Council's failure to recognize that the new

evidence undermined the ALJ's conclusion is not harmless. If Dr. Kohen's opinion had been

credited, Antle would have been limited to less-than-sedentary work and could not perform the light duty jobs identified by the VE. Therefore, the Commissioner's decision should be reversed as to this issue.

     B.     *Side Effects of Medications.*

Antle also argues that the ALJ failed to consider the side effects of her medications. Antle states that she had bruising from Methotrexate and bruising and shaking from Prednisone. Steroids caused weakness, and Methotrexate caused liver problems. Dr. Kohen noted side effects of dizziness, nervousness, upset stomach and fatigue.

However, at the hearing Antle complained only of bruising. She did not testify she had any other side effects and did not indicate how bruising or liver problems would interfere with her ability to work. Medical records indicate that medication was adjusted to address some of these side effects.

When a claimant does not complain about side effects and her doctors do not express concern regarding side effects, an ALJ does not err by determining that side effects from medications were not a significant problem for the claimant. *Swindle v. Sullivan*, 914 F.2d 222, 226 (11th Cir. 1990); *see also Cherry v. Heckler*, 760 F.2d 1186, 1191 n.7 (ALJ did not err in not inquiring into medication side effects where claimant was represented and only complained of drowsiness). Based on this record, the ALJ did not err in his consideration of side effects of Antle's medication.

C.    *RFC and Questions to the VE.*

Antle appears to argue that the ALJ failed to consider her hand impairments in his RFC or in his questions to the VE.  Antle also asserts that the ALJ did not include Dr. Abril's assessment of tiredness, discomfort in her right knee or stiffness in his RFC assessment or his questions to the VE.

It appears, however, that the ALJ included the right knee problems in the RFC through the limitations on postural activities.  He expressly included occasional limitations on use of hands, fingering and manual dexterity in the RFC arising from carpal tunnel syndrome.  While the ALJ cited the complaints of tiredness, *see, e.g*., R. 26, it is not clear how he factored that complaint into the RFC determination.

Moreover, the ALJ did not ask the VE to identify jobs Antle could perform in light of the RFC.  Instead, he simply asked the VE for "some examples of light work that would not require anymore [than] occasional use of the hands."  R. 42.  This limitation did not include the RFC limitations on fingering, manual dexterity and postural limitations.  Because these limitations were not posed to the VE, the record is insufficient to conclude that the VE would have found that Antle could perform the identified jobs with these additional nonexertional limitations.  *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985).  Therefore, remand is appropriate to permit the Commissioner to provide a more complete record to support his decision at step five of the sequential evaluation.

D.    *ALJ's Failure to Investigate.*

In this portion of her memorandum, Antle essentially restates the arguments made elsewhere.  I will not address these arguments again as to this assignment of error.

## VI.    RECOMMENDATION.

For the reasons set forth herein, I recommend that the decision of the Commissioner be **REVERSED** and that the case be **REMANDED** for further proceedings.  I further recommended that the Court direct the Clerk of Court to issue a judgment consistent with its final order and, thereafter, to close the file.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** in Orlando, Florida on December 7, 2011.

*Karla R. Spaulding*

KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE